UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| CHESTER N.,<br><br>　　　Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of the Social Security Administration,<br><br>　　　Defendant. | **MEMORANDUM DECISION AND ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 1:22-cv-00139<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Chester N.[1] brought this action for judicial review of the denial of his application for disability insurance benefits and supplemental security income by the Commissioner of the Social Security Administration.[2]  The Administrative Law Judge ("ALJ") who addressed Mr. N.'s application determined he did not qualify as disabled.[3]  Mr. N. argues the ALJ erred by failing to properly consider sitting limitations, reaching limitations, and urinary issues affecting his ability to work.[4]  Because the ALJ legally erred by failing to explain the omission of reaching limitations from Mr. N.'s residual functional capacity assessment, the

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the plaintiff is referred to by his first name and last initial only.

[2] (*See* Compl., Doc. No. 6); *see also* 42 U.S.C. §§ 401–434, 1381–1385.

[3] (Certified Tr. of Admin. R. ("Tr.") 11–22, Doc. Nos. 14–15.)

[4] (*See* Opening Br. 7–13, Doc. No. 16.)

Commissioner's decision is reversed and the case is remanded for further administrative proceedings.[5]

<u>STANDARD OF REVIEW</u>

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of the Commissioner's final decision.  This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[6]  "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10]  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings

---

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (Doc. No. 12.)

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[8] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[9] *Id.* at 1154 (internal quotation marks omitted).

[10] *Id.* (internal quotation marks omitted).

from being supported by substantial evidence."[11]  And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[12]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which is expected to result in death or last for at least twelve consecutive months.[13]  An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) she has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) she has the residual functional capacity to perform past relevant work; and

5) she has the residual functional capacity to perform other work, considering her age, education, and work experience.[15]

---

[11] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[13] 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A).

[14] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

[15] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The claimant has the burden, in the first four steps, of establishing disability.[16]  At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work in the national economy.[17]

<u>PROCEDURAL HISTORY</u>

Mr. N. applied for disability insurance benefits and supplemental security income on November 24, 2020, alleging disability beginning on February 28, 2019.[18]  After an administrative hearing,[19] the ALJ issued a decision on March 16, 2022, finding Mr. N. not disabled and denying benefits.[20]  At step two of the sequential evaluation, the ALJ found Mr. N. had the severe impairments of "cardiac dysrhythmias; degenerative joint disease of the bilateral knees; morbid obesity; anxiety; [and] depression."[21]  The ALJ also found Mr. N. had nonsevere impairments of "history of pulmonary embolism, obstructive sleep apnea, right carpal tunnel syndrome, diabetes mellitus, hypertension and hyperlipidemia."[22]  At step three, the ALJ found these impairments did not meet or medically equal an impairment listing.[23]

---

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] (*See* Tr. 11.)

[19] (*See* Tr. 28–49.)

[20] (Tr. 11–22.)

[21] (Tr. 13.)

[22] (Tr. 14.)

[23] (*Id.*)

The ALJ found Mr. N. had the residual functional capacity ("RFC")[24] to perform light

work, with additional exertional and functional limitations.[25]  Specifically, the ALJ found:

> He can stand and/or walk with normal breaks for 2 hours in an 8-hour workday; he
> can sit with normal breaks for 6 hours in an 8-hour workday; he can occasionally
> push and pull foot controls bilaterally; he can occasionally climb ramps and stairs;
> he can never climb ladders, ropes, and scaffolds; he can frequently balance; he can
> occasionally stoop, kneel, and crouch; he can never crawl; he can never be exposed
> to hazards such as unrestricted heights and dangerous moving machinery; [and] due
> to mental limits, he can perform goal oriented but not assembly line paced work.[26]

After considering the testimony of a vocational expert, the ALJ found Mr. N. capable of

performing other jobs existing in significant numbers in the national economy.[27]  Therefore, the

ALJ found Mr. N. not disabled and denied his claims.[28]

The Appeals Council denied Mr. N.'s request for review,[29] making the ALJ's decision

final for purposes of judicial review.

---

[24] A claimant's RFC is the most she can do in a work setting considering her limitations.  *See* 20
C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *2 (July 2,
1996).  In assessing RFC, the ALJ considers "the extent to which an individual's medically
determinable impairment(s), including any related symptoms, such as pain, may cause physical
or mental limitations or restrictions that may affect his or her capacity to do work-related
physical and mental activities."  SSR 96-8p, 1996 SSR LEXIS 5, at *5.  The ALJ considers all
relevant medical and other evidence in the record.  *See* 20 C.F.R. §§ 404.1545(a)(3),
416.945(a)(3).

[25] (*See* Tr. 15–16.)

[26] (*Id.*)

[27] (Tr. 21.)

[28] (Tr. 21–22.)

[29] (Tr. 1–3.)

<u>ANALYSIS</u>

Mr. N. makes three claims of error.[30]  First, he argues the ALJ erred by failing to include additional sitting limitations in his RFC.[31]  Second, he argues the ALJ erred by failing to explain why reaching limitations were omitted from the RFC.[32]  Finally, he argues the ALJ erred by failing to evaluate Mr. N.'s urinary issues.[33]  As explained below, the ALJ legally erred by failing to explain the omission of reaching limitations from the RFC, despite crediting a medical opinion regarding reaching limitations.  Accordingly, the Commissioner's decision is reversed and the case remanded for additional consideration.

### A.  Sitting Limitations

In the RFC determination, the ALJ found Mr. N. capable of sitting with normal breaks for six hours in an eight-hour workday.[34]  Mr. N. argues the ALJ offered "no explanation" for this finding and failed to consider (1) Mr. N.'s subjective symptoms of pain while sitting and (2) his treating provider's opinion regarding additional sitting limitations.[35]  However, the record shows the ALJ properly considered this evidence under the applicable legal standards, and substantial evidence supports the ALJ's findings regarding Mr. N.'s sitting limitations.

---

[30] (*See* Opening Br. 7, Doc. No. 16.)

[31] (*Id.* at 7, 9–10.)

[32] (*Id.* at 7, 12–13.)

[33] (*Id.* at 7, 11–12.)

[34] (Tr. 15.)

[35] (Opening Br. 7, 9–10, Doc. No. 16.)

*1. Subjective Symptoms*

An ALJ must evaluate subjective symptoms using a two-step process.  First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."[36]  Second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."[37]  In doing so, the ALJ must "examine the entire case record."[38]  The ALJ considers factors such as: the claimant's daily activities; the duration, frequency, and intensity of symptoms; medication taken and whether it alleviates the symptoms; and other treatment or measures used to relieve the symptoms.[39]  The ALJ also considers whether there are inconsistencies between the claimant's statements and the record or inconsistences in the evidence.[40]

The record shows the ALJ properly considered Mr. N.'s subjective symptoms related to pain while sitting under this legal framework.  The ALJ evaluated Mr. N.'s claim that he could not work because of impairments including bilateral knee pain, knee surgery, back pain, and morbid obesity.[41]  The ALJ stated he considered "all symptoms" in determining Mr. N.'s RFC,

---

[36] SSR 16-3p, 2016 SSR LEXIS 4, at *3 (Oct. 25, 2017); *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b).

[37] SSR 16-3p, 2016 SSR LEXIS 4, at *4; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

[38] SSR 16-3p, 2016 SSR LEXIS 4, at *9–10; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

[39] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[40] *Id.* §§ 404.1529(c)(4); 416.929(c)(4).

[41] (Tr. 16.)

and he specifically acknowledged Mr. N.'s report that "[w]alking, *sitting* and standing hurts."[42] The ALJ found Mr. N.'s medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Mr. N.'s statements concerning the intensity, persistence, and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record."[43]  The ALJ noted the consultative examiner opined that Mr. N. had no sitting limitations, and the ALJ found the consultative examiner's opinion "generally persuasive" and consistent with the medical record and the findings of state agency medical consultants.[44]  Indeed, two state agency medical consultants opined that Mr. N. could sit with normal breaks for six hours in an eight-hour workday[45]—consistent with the ALJ's RFC finding.

Thus, the record shows the ALJ considered Mr. N.'s reported symptoms but found him capable of sitting for six hours with normal breaks based on other evidence in the record, including the opinions of three medical sources.  This is consistent with the two-step process described above, and the cited medical opinions constitute substantial evidence supporting the ALJ's findings.  Accordingly, Mr. N. has demonstrated no error in the ALJ's consideration of subjective symptom evidence related to sitting.

### 2. *Treating Provider's Opinion*

Mr. N. also argues the ALJ failed to properly consider his treating provider's opinion regarding sitting limitations.  Under the applicable regulations, an ALJ must assess the persuasiveness of medical opinions based on the following factors: (1) supportability (the extent

---

[42] (*Id.* (emphasis added) (citing Tr. 282–89).)

[43] (*Id.*)

[44] (Tr. 19–20 (citing Tr. 1365).)

[45] (Tr. 62, 93.)

to which the opinion is supported by underlying medical evidence and explanations); (2) the consistency of the opinion with other medical and non-medical sources; (3) the relationship with the claimant (including the length, frequency, purpose and extent of the relationship, and whether it was an examining relationship); (4) any specialization; and (5) any other relevant factors.[46] The most important factors are supportability and consistency, and the ALJ is required to explain how he evaluated those two factors.[47]

The ALJ properly considered the treating provider's opinion under this framework.  Mr. N.'s treating provider opined "prolonged sitting, standing or walking increases chronic pain," and noted Mr. N. reported the pain was so severe he could not work.[48]  The ALJ acknowledged this opinion but found it "minimally persuasive."[49]  Specifically, the ALJ noted the opinion was provided on a checkbox form, did not reference any medical records for support, and was inconsistent with the provider's own exam notes.[50]  Thus, the ALJ adequately explained why he discounted this opinion, including addressing supportability and consistency as required.

In sum, the ALJ properly considered both Mr. N.'s subjective symptoms and his treating provider's opinion regarding sitting limitations under the applicable legal standards.  Further, the ALJ's finding that Mr. N. was capable of sitting for six hours with normal breaks was supported by substantial evidence, including the medical opinions of the consultative examiner and two

---

[46] 20 C.F.R. §§ 404.1520c(b), (c)(1)–(5), 416.920c(b), (c)(1)–(5).  These regulations are applicable to claims filed after March 27, 2017, like Mr. N.'s.  *See id.* §§ 404.1520c, 416.920c.

[47] *See id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

[48] (Tr. 1367.)

[49] (Tr. 20.)

[50] (*Id.*)

state agency medical consultants.  For these reasons, Mr. N. has demonstrated no error in the ALJ's RFC determination regarding his sitting limitations.

### B.  Reaching Limitations

Mr. N. next contends the ALJ erred by failing to explain why he did not include reaching limitations in the RFC based on the consultative examiner's opinion.[51]  As explained below, this failure requires reversal.

The consultative examiner evaluated Mr. N. and provided opinions regarding Mr. N.'s functional limitations,[52] including opining that Mr. N. had "limitations on reaching due to obesity and lower extremity pain."[53]  The ALJ considered the consultative examiner's opinions, specifically noting the opinion regarding reaching limitations.[54]  As noted above, the ALJ found the consultative examiner's opinions "generally persuasive," consistent with the state agency medical consultants' opinions "with a few variations," and consistent with the overall medical record.[55]  The ALJ stated, however, that he did not agree with the examiner's opinion that use of an assistive device was objectively warranted.[56]  The ALJ did not identify any other exceptions to his finding that the examiner's opinions were generally persuasive.  Despite this, the ALJ did not include any reaching limitations in Mr. N.'s RFC.[57]

---

[51] (*See* Opening Br. 7, 12–13, Doc. No. 16.)

[52] (Tr. 1359–65.)

[53] (Tr. 1365.)

[54] (Tr. 19–20.)

[55] (*Id.*)

[56] (Tr. 20.)

[57] (*See* Tr. 15–16.)

Social Security Ruling 96-8p provides: "If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted."[58]  The Tenth Circuit has held failure to explain the omission of limitations found in medical opinions is legal error requiring reversal.[59]

Here, the ALJ failed to explain his omission of reaching limitations from Mr. N.'s RFC, despite appearing to credit the consultative examiner's opinion regarding reaching limitations. The ALJ also did not address reaching abilities elsewhere in the decision—meaning his finding that the consultative examiner's opinion was persuasive is the only place this issue is addressed. There may well be good reasons, supported by substantial evidence, for omitting reaching limitations from the RFC notwithstanding the consultative examiner's opinion—but the ALJ did not provide any explanation for doing so.[60]  Where the omission of reaching limitations appears contrary to the ALJ's treatment of the consultative examiner's opinion, and the ALJ's decision does not otherwise address this issue, the ALJ's failure to explain the omission is legal error.[61]

This error cannot be considered harmless.  As Mr. N. points out, all jobs the ALJ found he could perform require frequent reaching, as described in the Dictionary of Occupational

---

[58] SSR 96-8p, 1996 SSR LEXIS 5, at *20.

[59] *Parker v. Comm'r*, 922 F.3d 1169, 1172–73 (10th Cir. 2019).

[60] *See id.* at 1172 ("The agency presumably could have disagreed with Dr. Ryan and Dr. Degroot.  But the agency didn't express any disagreement.  The agency instead said that it gave significant weight to Dr. Ryan's opinion and great weight to Dr. Degroot's.  Given the discrepancy between the agency's assessment of mental capacity and the medical opinions, the agency had an obligation to provide an explanation.").

[61] *See id.* at 1172–73.

Titles.[62]  Thus, if reaching limitations were included in Mr. N.'s RFC, this may have changed the ALJ's assessment of whether Mr. N. could perform these jobs.  Under these circumstances, the ALJ's error in failing to explain the omission of reaching limitations requires reversal.

### C.  Urinary Issues

Mr. N. also argues the ALJ erred in failing to address issues related to urinary urgency and frequency in his decision.[63]  Mr. N. asserts these issues stemmed from an enlarged prostate and were exacerbated by obesity, as diagnosed in the medical record.[64]  Mr. N. contends the ALJ should have considered these issues to be a medically determinable impairment and incorporated related limitations in his RFC, including the need for frequent bathroom breaks.[65]  In response, the Commissioner points out the medical record contains only one report to a provider regarding urinary incontinence, less than twelve months before the ALJ's decision.[66]  The Commissioner argues this evidence is insufficient for the alleged urinary condition to qualify as a medically determinable impairment.[67]

Where the Commissioner's decision is reversed and remanded for further consideration on other grounds, the court need not determine whether the ALJ erred by failing to address

---

[62] (*See* Tr. 21 (finding Mr. N. capable of working as a table worker, final assembler, and touchup screener)); *Dictionary of Occupational Titles* (4th ed. 1991) ("DOT") 739.687-182, 1991 WL 680217 (table worker requires frequent reaching); DOT 713.687-018, 1991 WL 679271 (final assembler requires frequent reaching); DOT 726.684-110, 1991 WL 679616 (touchup screener requires frequent reaching).

[63] (Opening Br. 7, 11–12, Doc. No. 16.)

[64] (*Id.* at 11.)

[65] (*Id.* at 11–12.)

[66] (Am. Answer Br. 17–19, Doc. No. 23 (citing Tr. 1404–05).)

[67] (*See id.*)

urinary issues in his decision.  On remand, all evidence in the record should be reconsidered in full.[68]

CONCLUSION

The ALJ legally erred by failing to explain the omission of reaching limitations from Mr. N.'s residual functional capacity assessment.  Accordingly, the Commissioner's decision is REVERSED and the case REMANDED for further administrative proceedings.

DATED this 9th day of January, 2024.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[68] *Cf.* HALLEX I-2-8-18, https://www.ssa.gov/OP_Home/hallex/I-02/I-2-8-18.html [https://perma.cc/48P9-WLBE] (last updated March 26, 2017).